UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY L. FERGUSON,

        Plaintiff,                          CIVIL ACTION NO. 10-14798

   vs.                                 DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF                 MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

### REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION:** This Court recommends that both Defendant and Plaintiff's Motions for Summary Judgment should be DENIED, and the instant case remanded for further proceedings consistent with this report and recommendation.

**II.**     **PROCEDURAL BACKGROUND**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on May 10, 2007, alleging disability beginning October 31, 2003. (TR 115-21). The applications were denied and Plaintiff appeared with counsel for a *de novo* hearing before Administrative Law Judge (ALJ) B. Lloyd Blair, who determined that Plaintiff was not disabled in a decision dated December 2, 2009. (TR 53-63, 15-25). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-3). The parties filed Motions for Summary Judgment and the issue for review is whether the Defendant's denial of benefits was supported by substantial evidence on the record.

**III.**     **PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY**

1

### A.     Plaintiff's Testimony

Plaintiff was forty-nine years old at the time of the administrative hearing, has a high school education, and previously worked as a dishwasher and adult foster care worker. (TR 34-36). She stated that she is unable to work due to thyroid problems, fibromyalgia, acid reflux, arthritis in one knee, back problems, and diabetes. (TR 37). Plaintiff testified that she has varicose veins that cause her pain when standing. (TR 42-43). She testified that she takes Ultram and muscle relaxers to relieve her back pain, she elevates her legs to relieve swelling, and she wears special compression stockings to treat her varicose veins. (TR 37-38, 43-44, 46). She does not wear a brace for her knee and she has not had knee surgery. (TR 38).

Plaintiff lives in a single-story home with her brother, sister, and brother-in-law. (TR 40). She cooks, washes laundry, and spends her day crocheting and watching television with her legs elevated. (TR 40-41). Plaintiff testified that she can lift approximately ten pounds, stand for fifteen to thirty minutes, sit for one hour, and walk one half block without stopping. (TR 42). She testified that she has taken medication to relieve symptoms of depression for ten years. (TR 44-45).

### B.     Medical Record

In 2004 Plaintiff was evaluated on two occasions by a medical practitioner at Hillside Medical Associates (Hillside) for complaints of numbness of the left side of her face and arm, and generalized achiness with swollen feet, legs, and hands. (TR 221-24). The medical practitioner documented that Plaintiff was obese and diagnosed her with hypertension, hypothyroidism, gastroesphageal reflux disease, fibromyalgia, panic attacks, and a right ovarian cyst. The medical practitioner ordered laboratory tests, a mammogram, and a psychiatric consult. (TR 222, 224). The record does not contain a report from a mental health professional showing that Plaintiff sought and

received mental health treatment.

In March 2005 Plaintiff returned to Hillside complaining of swollen and itchy legs and reporting that her prescription for water pills had run out one month earlier. (TR 219-20). The medical practitioner documented +2 edema of the feet and noted that Plaintiff had not scheduled a follow-up visit or had her blood work drawn. The practitioner documented that Plaintiff was non-compliant with her treatment, restarted Plaintiff's medications, and ordered laboratory work. Plaintiff returned to Hillside several weeks later with new complaints of back pain and reported that her leg swelling had improved. The practitioner documented +1 edema of the feet and prescribed Flexeril, over-the-counter Motrin, diet, and exercise. (TR 217-18).

In April 2005 Plaintiff returned to Hillside to follow-up on laboratory work. (TR 215). Plaintiff reported that she was walking twenty-five minutes each day and feeling better. The medical practitioner documented minimal edema in the feet. The practitioner also noted that Plaintiff's neuropathy, leg swelling, back pain, and hypertension had improved, her hypothyroidism was stable, and her dyslipidemia was being treated with diet and exercise. (TR 218). An August 2005 treatment note shows that Plaintiff was walking twenty-five minutes a day with no edema of the feet and less back pain. (TR 213-14). The medical practitioner ordered an x-ray of the lumbosacral spine which revealed facet joint degenerative spondyloarthropathy in the lower spine. (TR 261). In October 2005 Plaintiff presented to Hillside with complaints of chest pain and sweating. (TR 207-08). The practitioner ordered an echocardiogram which revealed severe hypokinesis of the interventricular septum with moderate hypokinesis of the lateral wall of the left ventricle. (TR 249).

In May, June, and September 2006 Plaintiff presented to Hillside with complaints of

persistent back pain and left shoulder pain and swelling. (TR 199-206). A radiology report of the left elbow revealed a possible intra-articular effusion with no other osseous or articular abnormality. (TR 245). An x-ray of the lumbar spine was unremarkable. (TR 244). In November 2006 Plaintiff presented to the hospital emergency room with chest pain. (TR 195-96, 235-36 ). A physical examination revealed a tender right knee with painful range of motion, tenderness to palpitation in the upper chest and trace edema in the extremities. (TR 196, 235). Plaintiff's chest x-ray was unremarkable. (TR 237). Plaintiff was diagnosed with bronchitis and swelling of the extremities. She was provided with prescriptions of Keflex and Lasix and instructed to elevate her extremities to minimize swelling. (TR 235-36).

In April 2007 Plaintiff presented to Hillside with complaints of muscle pain. (TR 187-88). She was diagnosed with myalgia and tennis elbow and was prescribed Naprosyn. (TR 188). An MRI of Plaintiff's right and left knee revealed moderate degenerative osteoarthritis and varicosities. (TR 230-31, 234). Plaintiff underwent a cardiac catherization in November 2007 which was fairly unremarkable and showed no evidence of obstructive coronary disease. (TR 293-95). Plaintiff continued her treatment at Hillside in 2008 and 2009. In June 2008 Plaintiff presented with chest pain and "major swelling" in her legs and feet. (TR 308). In subsequent visits Plaintiff reported that she was doing well and was observed with less swelling. (TR 303-07).

On June 25, 2007 Dr. Glen Douglass completed a Physical Residual Functional Capacity Assessment for the state disability determination service (DDS). (TR 285-92). Dr. Douglass opined that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk at least two hours in an eight hour work day, and sit approximately six hours in an eight hour work day. Dr. Douglass concluded that due to Plaintiff's knee, degenerative joint

disease, and morbid obesity she would be able to stand or walk significantly less than six hours in an eight hour work day. (TR 287). Dr. Douglass opined that Plaintiff could frequently balance, occasionally stoop, crouch, and climb stairs, but never climb ladders, ropes, scaffolds, and never kneel or crawl. He concluded that Plaintiff should avoid extreme cold, but otherwise found that she had no environmental, manipulative, visual, or communicative limitations.

On July 12, 2007 Frederick Greaves, Ed.D. completed a Psychiatric Review Technique form for the state DDS. (TR 271-84). Dr. Greaves observed that while Plaintiff had been diagnosed in 2004 with panic attacks and fibromyalgia there were no references in the medical record of mental health problems or treatment within the last fourteen months. Dr. Greaves concluded that Plaintiff did not have a medically determinable psychiatric impairment.

In July 2008 Plaintiff presented to vascular specialist Dr. Tammy Gleason for treatment of varicose veins. (TR 367). Dr. Gleason noted swelling of both extremities, with moderate to large bilateral thigh and calf varicosities and discoloration of both legs. Dr. Gleason diagnosed Plaintiff with symptomatic varicose veins of the bilateral lower extremities and chronic venous insufficiency. (TR 368). She advised Plaintiff to wear compression stockings and have an ultrasound of the lower extremity veins. (TR 368). In a follow-up visit Dr. Gleason noted that Plaintiff's ultrasound showed severe chronic venous insufficiency of the bilateral greater saphenous veins. (TR 365). She diagnosed Plaintiff with symptomatic varicose veins of the lower extremities and chronic venous insufficiency. Plaintiff was advised to wear compression stockings, exercise regularly, and undergo bilateral greater saphenous vein laser ablation. (TR 365). The record shows that Plaintiff did not schedule the recommended surgery. (TR 364).

In November 2009 Family Nurse Practitioner (FNP) Mary Sies and Dr. Dan McCance co-

signed a Physical Residual Functional Capacity (RFC) Questionnaire assessing Plaintiff's physical limitations. (TR 370-73). The assessment states that Plaintiff can walk approximately two city blocks without rest or pain, sit for thirty minutes at a time and less than two hours per day, and stand for ten to fifteen minutes at a time and approximately two hours per day. The assessment states that Plaintiff must walk five to ten minutes out of every half hour. Plaintiff must be permitted to sit, stand, or walk at will and take two unscheduled fifteen minute breaks during an eight hour work day. The assessment states that with prolonged sitting Plaintiff must elevate her legs to waist level and must keep her legs elevated fifty percent of her work day if she is assigned sedentary work. Plaintiff may frequently lift and carry less than ten pounds, occasionally lift and carry ten pounds, and never lift more than twenty pounds. The assessment states that Plaintiff can rarely hold her head in a static position and can only occasionally look down, turn her head to the left or right, or look up. The assessment states that Plaintiff's impairments would cause her to miss more than four days of work each month.

**C.     Vocational Expert**

The Vocational Expert (VE) testified that Plaintiff's past work as a personal assistant/home attendant was light to heavy low-end semiskilled work with a specific vocational preparation (SVP) code of 3. (TR 48). The VE testified that Plaintiff's past work as a kitchen helper was medium unskilled labor with an SVP code of 2. (TR 48). The ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience who could perform light work with the following limitations: (1) limited to standing and walking two hours in an eight hour work day, (2) limited to sitting six hours in an eight hour work day, (3) occasional climbing of stairs and ramps, but never ladders, ropes, or scaffolding, (4) occasional stooping or crouching, (5) no concentrated

exposure to cold, (6) no use of foot pedals, and (7) limited to simple unskilled work. (TR 48-49).

The VE testified that such an individual would not be able to perform Plaintiff's past relevant work. The VE further testified that the restrictions of sitting for six hours and standing for two hours classified the hypothetical individual in the restricted light work category and that such an individual would be capable of performing sedentary unskilled work as an addresser, final assembler, and "bench hand, clock, and watch" jobs, comprising 5,684 jobs in the state. (TR 49, 51). The ALJ inquired as to what jobs the hypothetical person could perform if she required a sit/stand option. The VE testified that such a person could work as a bench hand. The ALJ then asked the VE what jobs could be performed by an individual who experienced the same pain limitations claimed by Plaintiff or by an individual who was required to elevate her legs fifty percent of the time during an eight hour work day. (TR 50). The VE testified that work would be precluded under those limitations.

## IV.    **ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since October 31, 2003, and suffers from the severe impairments of obesity, back pain, venous insufficiency, and fibromyalgia, she does not have an impairment or combination of impairments that meets or equals a listed impairment. (TR 17-18). The ALJ determined that Plaintiff retains the residual functional capacity to lift/carry/push/pull twenty pounds occasionally and ten pounds frequently; stand/walk/sit six hours in an eight hour work day, with an option to sit/stand at will; occasionally use ramps, stairs, stoop, or crouch, but never use foot pedals, ladders, ropes, or scaffolds; and avoid concentrated exposure to extreme cold. (TR 19-23). The ALJ further concluded that Plaintiff could not perform her past relevant work, but could perform a significant

7

number of jobs in the national economy. (TR 23-24). Consequently, the ALJ concluded that Plaintiff is not disabled under the Social Security Act.

## V. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

    1. she was not presently engaged in substantial gainful employment; and
    2. she suffered from a severe impairment; and

> 3. the impairment met or was medically equal to a "listed impairment;" or
> 4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ improperly evaluated the medical opinion of FNP Sies and Dr. McCance and formulated an RFC that did not accurately portray Plaintiff's physical limitations. Specifically, Plaintiff argues that the limitation in the RFC that Plaintiff has the capacity to stand or walk six hours in an eight hour day is not supported by substantial evidence and is contrary to the hypothetical the ALJ posed to the VE. Additionally, Plaintiff argues that the ALJ did not recognize that the opinion of FNP Sies was signed by Dr. McCance, and instead discounted the opinion on the basis that an FNP is not an acceptable medical source. Finally, Plaintiff argues that the ALJ erred in failing to consider whether Plaintiff's borderline age should have resulted in her classification as

a person closely approaching advancing age, a classification that Plaintiff claims would require a finding of disability under a corrected RFC.

**1.      The Opinion Of FNP Sies and Dr. McCance**

Plaintiff argues that the ALJ failed to recognize that the medical opinion of FNP Sies was co-signed by Dr. McCance, and instead attributed inadequate weight to the opinion on the basis that a nurse practitioner is not an acceptable medical source. As discussed above, FNP Sies and Dr. McCance co-signed a Physical RFC documenting Plaintiff's limitations. (TR 370-73). Among other things, the opinion states that Plaintiff must elevate her legs to waist level fifty percent of the time if her job requires prolonged sitting. The VE testified that a limitation requiring Plaintiff to elevate her legs fifty percent of her work day would be work preclusive. The ALJ considered FNP Sies' opinion in formulating the RFC, but did not expressly recognize that it was signed by Dr. McCance. Instead, the ALJ found that he was not required to assign any weight to the opinion because it was not from an acceptable medical source. The ALJ further stated that the restrictions indicated in the medical opinion were "fairly consistent" with those in his decision.

A nurse practitioner is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Therefore the opinion of a nurse practitioner is not entitled to controlling weight. SSR 06-03p (only acceptable medical sources may establish the existence of a medically determinable impairment, may be considered as treating sources, and may give medical opinions that are entitled to controlling weight). Nonetheless, due to their material role in managed care, the Commissioner has recognized that nurse practitioner opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." Social Security Ruling (SSR) 06-3p. Hence, the opinion of a nurse practitioner can be considered

as evidence from an "other source" for the purpose of determining the severity of the claimant's impairments or her ability to function. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). In contrast, a licensed physician is an acceptable medical source and his or her opinion may be given controlling weight.

Here, the ALJ considered the opinion of FNP Sies but did not acknowledge that Dr. McCance also signed the opinion. Therefore, it is not known whether the ALJ recognized that the opinion was signed by Dr. McCance and whether that fact would have caused the ALJ to attribute greater weight to the opinion, and in particular to the requirement that Plaintiff would need to elevate her legs fifty percent of her day. Although the ALJ stated that the restrictions in the November 2009 Physical RFC were fairly consistent with those in his decision, his decision is not consistent with the assessment that Plaintiff must elevate her legs fifty percent of the day, a limitation which the VE found to be work preclusive. The Court recommends that the ALJ's decision be remanded to permit the ALJ an opportunity to determine whether the November 2009 Physical RFC of FNP Sies should be given greater weight since it was co-signed by Dr. McCance.

**2.      The RFC and Plaintiff's Advancing Age**

Next, Plaintiff argues that the ALJ's limitation in the RFC that Plaintiff has the capacity to stand or walk six hours in an eight hour day is not supported by substantial evidence and is contrary to the hypothetical the ALJ posed to the VE, which asked the VE to assume that Plaintiff was limited to standing or walking two hours in an eight hour day. Plaintiff also argues that the ALJ failed to consider whether she should be categorized as a person closely approaching advanced age.

The Sixth Circuit recognizes that the ALJ is under no obligation to "address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-

category determination," provided he at least considers deviating "from the chronological-age default in borderline situations." *Bowie v. Comm'r*, 539 F.3d 395, 399 (6th Cir. 2008).  Here, the ALJ listed Plaintiff's age of disability, birth date, and cited 20 C.F.R. §§ 404.1563 and 416.963 before categorizing Plaintiff as a younger individual, which minimally indicates that he was aware of the "regulation governing age categorization" and recognized that Plaintiff was quickly approaching age fifty. *Bowie v. Comm'r*, 539 F.3d at 400 n.5.  In addition, the ALJ reviewed the complete record and found that direct application of the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Grids) was not appropriate.  Instead, the ALJ relied on the testimony of the VE that a person with Plaintiff's age, education, and work experience who was limited to standing for two hours and sitting for six hours with a sit/stand option would fall within the restricted light work category and would be capable of performing the sedentary job of bench hand. (TR 24, 49, 51). *See Burton v. Sec'y of Health & Human Servs.,* 893 F.2d 821, 822-23 (6th Cir. 1990) (where nonexertional limitations impede a claimant's ability to perform all or substantially all of the work required at a particular level, or where fewer than all of the claimant's characteristics match the requirements in the Grids, the ALJ must use the Grids as a guide only and will rely on other evidence, such as the testimony of a VE, to determine whether the claimant retains the ability to perform a significant number of jobs with those nonexertional limitations).

The Court has considered the full record and the parties' briefs and finds that Plaintiff's RFC, age classification, and ultimate disability determination may be impacted on remand if the ALJ attributes greater weight to the November 2009 Physical RFC of FNP Sies and Dr. McCance. Because of this the Court recommends that this matter be remanded so that the ALJ can analyze the November 2009 Physical RFC as signed by Dr. McCance, and consider whether and to what extent

the weight assigned to that medical opinion on remand will impact Plaintiff's RFC, the ALJ's assessment of Plaintiff's age category, and the ultimate disability determination.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 6, 2012           s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 6, 2012                  s/ Lisa C. Bartlett
                                                  Case Manager